IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| MILLENNIUM SUPER STOP II, LLC, | ) | Case No. 16-41972 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| 786 Enterprises, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Adversary Proceeding No. 16-4094 |
| Millennium Super Stop II, LLC, | ) | |
| | ) | |
| Debtor/Defendant. | ) | |
| | ) | |
| _____ | ) | |
| Millennium Super Stop II, LLC, | ) | |
| | ) | |
| Debtor/Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. 16-4096 |
| | ) | |
| 786 Enterprises, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

Before the Court are several items: a Request to Determine Lease Term filed by debtor Millennium Super Stop II, LLC ("Millennium" or "Debtor"); a Motion to Approve Contract for Sale filed by Debtor; a Motion to Reject Executory Contract filed by Debtor; an Adversary Complaint to Compel Turnover of Property filed by Debtor and an Adversary Proceeding against

Debtor for Declaratory Relief and for Specific Performance filed by 786 Enterprises, Inc. ("786"). This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1). They are core proceedings, pursuant to 28 U.S.C. § 157(b)(2)(E) and (N) which this Court may hear and determine and in which it may issue a final order. The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure made applicable to these proceedings by Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below the Motion to Approve Contract for Sale is denied; the Motion to Reject Executory Contract is denied; the Complaint to Compel Turnover of Property is denied; and the Complaint for Declaratory Relief and Specific Performance is granted. The Request to Determine Lease Term is moot.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

In June 2010, Debtor and 786 entered into a lease agreement ("Lease") in which Debtor leased a gas station and convenience store at 1601-03 W. 12th Street, Kansas City, Missouri, named Millennium Super Stop II (the "Property") to 786. The Property includes 16 gas-diesel pumps, a Wendy's restaurant, an outdoor elevated sign, a car wash and signage on I-670. 786 paid a fixed monthly rent to Debtor of $16,500. Article 15 of the original Lease gave 786 the exclusive right to purchase the Property for the appraised value at a future date and included an agreement to employ Hopkins Appraisal Services ("Hopkins") for purposes of acquiring written appraisals of the Property (the "Option"). 786 paid Debtor a non-refundable, good-faith $75,000 deposit towards the Option. The Lease was prepared by Debtor's counsel and signed on June 7, 2010.

In 2012, 786 notified Debtor that it was exercising the Option to purchase the Property and Hopkins was retained to perform an appraisal. In December 2012, Hopkins appraised the property at $1,620,000. However, Debtor was unable to close on the sale due to ongoing litigation against it by Eagle Fuels regarding a contract to acquire branded fuel.

In November 2014, the Eagle Fuels litigation was settled and 786's counsel drafted an amendment to the Lease that included provisions modifying Article 15 as follows: the Lease was to continue on a month-to-month basis until terminated by either party; 786 could exercise its option to purchase at any time prior to the termination of the Lease and the $75,000 deposit would be applied to the purchase price; and in the event 786 did not exercise its option to purchase, Debtor was to return the $75,000 deposit.

In April 2015, 786 again notified Debtor that it intended to exercise the Option to purchase the Property and Hopkins was again requested to perform an appraisal. Due to interference in the appraisal process by Debtor's then-counsel, Hopkins withdrew from the process. Thereafter, the parties amended the Option to designate a replacement appraiser (the "Option Amendment"). The amendment provided that Industrial State Bank, 786's lender that would finance the acquisition, would choose either Burgess Appraisal or Bliss & Associates to perform the appraisal to establish the purchase price.

On September 10, 2015, Industrial Bank issued an engagement letter to Bliss to appraise the Property. Bliss conducted the appraisal and reported the Property's value was $1,400,000. On October 23, 2015, 786 gave timely written notice to Debtor of its election to purchase the Property for $1,4000,000 and included a signed purchase agreement in the form required by the Lease. On October 27, 2015, Debtor's counsel issued a letter to 786 that Debtor would not

execute the purchase agreement because Bliss was not the designated appraiser under the Lease, an obviously false contention.

On October 30, 2015, Debtor commenced a lawsuit in the Circuit Court of Jackson County, Missouri, to challenge the valuation of the Property alleging the language in the Lease was vague. 786 sought specific performance of the Option among other things. On June 27, 2016, Debtor sent 786 a letter giving notice of intent to terminate the Lease on August 1, 2016. The state court action was set for trial on August 1, 2016, but Debtor filed a petition for relief under Chapter 11 in this Court on July 26, 2016.

## II.    LEGAL ANALYSIS

### A. Ambiguity

Debtor asserts that the Option Amendment is ambiguous as applied because it leads to an absurd result in that the fair market value of the Property is substantially greater that the appraisal amount. "The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention." *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264 (Mo. banc 1973). When investigating intent, sources outside the contract itself are often considered, i.e., subsidiary agreements, the facts and circumstances surrounding the execution of the contract, the construction the parties have placed on the contract, and other external circumstances. *Butler v. Mitchell–Hugeback, Inc.,* 895 S.W.2d 15, 21 (Mo. banc 1995). However, where the contract is unambiguous, intent is ascertained from the contract alone. *J.E. Hathman,* 491 S.W.2d at 264. A disagreement between the parties as to the proper interpretation of the contract does not render the contract ambiguous. *Id.* In a contract, an ambiguity arises only where its terms are susceptible to fair and honest differences. *Venture*

*Stores, Inc. v. Pac. Beach Co. Inc.*, 980 S.W.2d 176, 181 (Mo. Ct. App. 1998) (citing *CB Commercial Real Estate Group, Inc. v. Equity Partnerships Corp.,* 917 S.W.2d 641, 646 (Mo.App.1996)). The determination of a contract's ambiguity is a question of law and properly decided by the court. *Id.*

Here, the plain language of the option amendment states, "The parties agree to be bound by the appraisal and agree that it shall satisfy the condition set forth in Article 15 of the Lease." The plain language of the option is clearly not ambiguous.

However, Debtor argues that the absurd result (the alleged unfair appraisal amount) makes the clause ambiguous and thus unenforceable. Debtor argues that the fair market value, as established by Debtor's own testimony and two older appraisals, is so much higher than the appraised value that it would lead to an absurd result for 786 to be able to purchase the property at the appraised value.

The Court disagrees. First, the appraisal result is not the type of absurdity envisioned by the courts. The terms of the contract, as mentioned above, were plain and clear. The Court need not even go beyond the language of the contract for that reason alone, but even if it does, the process was also not absurd. Debtor's circular argument that the result obtained by utilizing the process agreed to in the amended option is disingenuous. Debtor testified that he understood the amendment provisions and intended to be bound by their terms. The option language does not provide a mechanism to contest the appraised value. The language is plain and clear that the agreed appraiser will determine a value and 786 will tender that amount and Debtor will convey the Property. Once 786 exercised the Option and the appraiser determined a value there was no manner set forth in the language to enable Debtor to challenge that procedure and amount. Debtor agreed to that language, and, in fact, Debtor actually edited the draft amendment but did

not further define value or create a procedure to dispute an appraisal result. There was also testimony that Debtor uses the same language in its leases on other properties.

Furthermore, there is no persuasive evidence that the result is absurd. Debtor testified to his opinion that the value of the Property is approximately $3 million, and based his opinion on planned development and monthly events in the area. However, this was a lay opinion, with no support and he was not qualified as an expert. Central Bank's 2016 inferred appraised amount was based on the Bank's 80% loan-to-value policy and a loan amount of $1,700,000, but the purpose of the Bank's testimony was not to value the property and the Bank's agent was not qualified to testify to value. The other appraisals upon which Debtor relies were not admitted into evidence. The additional appraisal that was admitted into evidence was performed by Hopkins in December 2016 and showed an appraised value of $1,620,000. The two professional appraisals admitted into evidence at trial (Hopkins 2016 and Bliss) are not so far apart as to cause the result to be absurd when interpreting the plain language of the modified Option.

The only expert testimony admitted at trial was the Bliss appraiser whose appraisal valued the Property at $1,400,000. Although the appraisal is subject to criticism, there was no evidence presented that his appraisal did not meet applicable appraisal standards. The Court agrees that his depreciation analysis was questionable in using an 80% deduction for obsolescence of improvements with little explanation as to how he arrived at that percentage amount. In addition, the sales analysis arguably could have included more comparable properties. Most importantly, however, the income approach analysis was not discredited and there was ample support for the integrity of 786's financial information on which the income analysis was based. Debtor attempted to question 786's management of the property but the issues identified, such as restrooms and the carwash closed for repair, were minor and/or

temporary issues. Debtor also claimed that the financial information of 786 utilized by Bliss for the income analysis was insufficient and unreliable. However, both 786's accountant and banker testified to the reliability of its financial information, as did 786's principal.

Thus, the Court finds that the language used in the amendment to the option contained in the Lease is not ambiguous and does not lead to an absurd result.

### B. Was Amendment Illusory/Without Consideration?

The necessary elements of an enforceable contract under Missouri law are (1) offer; (2) acceptance; and (3) bargained for consideration. *See Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661 (Mo. 1988). A contract is "illusory" where a party has it in his power to keep his promise yet escape performance of anything detrimental to himself. *Cooper v. Jensen*, 448 S.W.2d 308 (Mo. Ct. App. 1969).

Debtor argues that when the parties amended the Option in 2014 and agreed to make 786's $75,000 option deposit refundable that it rendered the Option illusory and without consideration. Thus, according to Debtor, the Option is void and not an enforceable contract. What Debtor fails to note is that in the 2014 amendment, 786 agreed to pay $75,000 towards Debtor's Eagle Fuels litigation settlement, to purchase another property by a date certain so Debtor could use the proceeds to pay the litigation settlement and to continue to pay rent on a month to month basis at what the testimony showed to be an above market rate. All of these terms satisfy the element of consideration and 786 has performed them. Further, the sufficiency of the consideration was acknowledged by the parties in the Option amendment.

The Court notes that Debtor does not even address in its brief why these additional detriments to 786 did not constitute consideration. The Court finds that the amended Option was not without consideration and illusory, and therefore the Option is enforceable.

### C. Is 786 entitled to Specific Performance?

786 argues that it exercised its option to purchase the Property as required under the terms of the Lease and the amended Option terms and should be granted specific performance allowing it to purchase the Property for the price established by the Bliss appraisal. Specific performance is an equitable remedy by which a contract that is sufficiently definite, certain and complete is enforced as written. *Coale v. Hilles*, 976 S.W.2d 61, 65 (Mo. Ct. App. 1998). An option constitutes a continuing offer until accepted and at such time of acceptance, a valid agreement arises supported by mutual promises. *Frey v. Yust*, 516 S.W. 321, 323 (Mo. Ct. App. 1974). An exercised option contract may be enforced by specific performance. *See Venture Stores*, 980 S.W.2d at 180 (citing *Dean Operations, Inc. v. Pink Hill Assocs.*, 678 S.W.2d 897, 900 (Mo. Ct. App. 1984).

The required elements for a valid contract per Missouri law are (1) parties; (2) subject matter; (3) promises made by both parties; (4) price; and (5) consideration. *Id.* In this case, (1) Debtor & 786 are the parties; (2) Millenium Super Stop is the property at issue; (3) the parties promised to pay the appraised value and convey the Property; (4) the price of the Property was agreed to be the appraised value by the agreed appraiser per the terms of the amended Option; (5) the consideration for the Option is as discussed above. Thus, the elements necessary for the option to be considered a contract subject to specific enforcement under Missouri law are clearly met

here and 786 is entitled to specific performance - the conveyance of title to the Property under the amended Option.

*Venture Stores, Inc. v. Pacific Beach, Inc.*, 980 S.W.2d 176 (Mo. Ct. App. 1998), is very similar to this case.  Venture Stores held a purchase option and sued Pacific Beach for specific performance after it exercised the option and Pacific Beach refused to comply. Pacific Beach claimed the option was ambiguous and unenforceable.  That court held that the option was not ambiguous and that Venture Stores was entitled to specific performance.  The *Venture Stores* court also ruled that rent payments during the pendency of litigation should be credited against the purchase price.  This Court agrees that Debtor should have complied with the option as amended and conveyed the property after 786 exercised the option on October 23, 2015, and an appraised value was obtained.  It does appear to be inequitable for Debtor to retain the monthly $16,500 rent that 786 has paid during the pendency of the state court lawsuit and this bankruptcy case, in addition to receiving the full agreed appraisal amount. The Court also notes that Debtor's refusal to perform was clearly in bad faith, a false reason having been given for refusal to close.  Debtor's efforts since then have all been in furtherance of a sort of seller's remorse and unwillingness to abide by the terms of the Option in hopes of securing a higher price.  Thus, the purchase price will be reduced by the amount of rent that 786 has paid to Debtor from November 22, 2015 (30 days after it exercised the Option) up to the date of this Order.

**D.  Is Contract Executory?  And even if so, is 786 entitled to protection under 365(i)?**

Debtor asserts that the Option is an executory contract and may be rejected by it.  786 argues that Debtor breached the Option before attempting to reject it, that its performance was

therefore excused, and that the Option was no longer executory, and Debtor is thus unable to reject it.

The Eighth Circuit follows the Countryman test in determining whether a contract is executory. That test provides: "A contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." *In re Interstate Bakeries Corp.*, 751 F.3d 955 (8th Cir. 2014).

The Court agrees with 786 that the decision *In re Orla Enterprises, Inc.,* 399 BR 25 (N.D. Ill. 2009) is on point. In that case, the tenant gave notice to the debtor of its intention to exercise its purchase option but the debtor refused to sell the property pursuant to the option. As here, litigation ensued in the state court followed by debtor filing bankruptcy and attempting to reject the option under §365(a) as an executory contract. That court determined that under the Countryman test, when debtor breached the contract prior to bankruptcy by failing to perform under the option, the option was no longer executory for purposes of §365. Here, 786 had fully performed under the Option to the extent possible given Debtor's failure to perform and breach of the option. 786 thus has no further duty to perform but rather holds a claim against Debtor and the contract is no longer executory for purposes of § 365. Debtor admits in its own brief on p. 10 that "Debtor's rejection of the Option results in a material breach of the contract." Debtor argues the *Orla* case differs because the tenant had abandoned the property and the parties were no longer in a contractual relationship at the time the bankruptcy petition was filed. While true, that was not the basis for the *Orla* court's decision, and this distinction does not change the application of *Orla* to this case.

Debtor also contends the lease and option were not integrated and thus the option is unilateral and creates no obligations under the lease. The Court fails to see the relevance of this argument but notes that the Lease and the Option are clearly integrated. The "Option to Purchase" in included as Article 15 in the Lease. Additionally, Article 16.9 of the Lease integrates all sections as the "entire agreement." The 2014 amendment is simply that, an amendment to an article of the original lease. However, Debtor again fails to address case law that finds that a purchase option contract contained in a lease is a unilateral contract that becomes a bilateral executory contract once it is exercised. (but as discussed above, is no longer executory once Debtor breached pre-petition). *See Orla*, 399 B.R. at 28.

Notwithstanding any of the above discussion, even if the contract option is executory and subject to rejection, 786 is entitled to the protection of §365(i) which provides that 786 has the right to retain possession of the Property. *See In re Pogue*, 130 BR 297 (E.D. Mo. 1991). Section 365(i) provides that if the trustee rejects an executory contract for the sale of property and the purchaser is in possession, such purchaser may treat such contract as terminated, or may remain in possession of such real property. If the purchaser remains in possession, the purchaser shall continue to make all payments due under the contract, but may offset against such payments any damages caused by nonperformance of any obligation of the debtor. 11 U.S.C. §365(i)(2)(A). Further, §365(i)(2)(B) requires that the trustee shall deliver title to the purchaser in accordance with the provisions of the contract.

Debtor asserts that §365(i) is not applicable because 786 is a tenant at sufferance and is wrongfully in possession because Debtor gave notice of termination. Under Missouri law, once a lessee exercises an option to purchase leased real estate, the lessee is in possession of that property pursuant to a contract to purchase and a bilateral contract remains. *Briar Road LLC v.*

*Lezah Stenger Homes, Inc.*, 321 S.W.3d 488 (Mo. Ct. App. 2010).  Once a buyer accepts an option in the prescribed manner, a binding bilateral contract is created and that bilateral contract is specifically enforceable.  *In re Estate of Schulze*, 105 S.W.3d 548 (Mo. Ct. App. 2003). *Riddle v. Elk Creek Salers*, 52 S.W.3d 644 (Mo. Ct. App. 2001).

Here, 786 had exercised the option to purchase over 8 months prior to Debtor sending a notice of intent to terminate the lease and therefore acquired equitable title to the property. Debtor admits in its brief that it could not have challenged 786's exercise of the Option on the basis that the Lease was terminated because the Option was exercised prior to such termination. Debtor's argument that 786 did not accept the offer or enter into a sale contract as prescribed by the Option is without merit.  786 clearly exercised the Option under the terms of the Lease and has been ready and willing to enter into a sale contract but unable to do so due to Debtor's refusal.

### E.  Motion to Approve Sale

Debtor filed a Motion to Approve Contract for Sale and attached a proposed Contract of Sale. Initially, the Court notes that Debtor failed, in its motion, at trial and it its post-trial brief, to identify what parts of §363(f) would permit the sale free and clear of the Option under these circumstances[1].

Notwithstanding Debtor's failure to identify which part of which statute supports its Motion, there is no evidence there is an actual contract to purchase.  The attached Contract for Sale recites that the buyer Alliance Petroleum, LLC, would purchase the Property for $2,500,000.

---

[1] The Court need not determine whether sale free and clear of the lease/option is even permissible.  *See Precision Industries, Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537 (7th Cir. 2003); disagreed with by *In re Crumbs Bake Shop, Inc.*, 522 B.R. 766 (Bankr. D.N.J. 2014).

However, the purported buyer's principal testified that he expected the property to be in good working order and for all improvements to be made at Debtor's expense prior to sale. Debtor had testified that the car wash was broken and pumps were old and there was testimony that the bathroom and other areas had been in disrepair. Debtor's principal testified to at least $550,000 in repair costs. There would also be a sales commission paid to the broker of 5-10% of the purchase price which would be approximately $125,000-$250,000. Further, the "offer to purchase" gives the Purchaser many routes to terminate the alleged contract. The prospective buyer could inspect the Property, books and records, and could terminate the sale contract without cause for any reason during the review period. It is absolutely not clear to the Court based on the proposed buyer's testimony and the draft sales contract that this proposed sale would be significantly better for the estate over the sale to 786 after the potential repair deductions are made and a sales commission is paid. Considering such deductions to the offer price of $2,500,000, the final net purchase price could be $1,825,000-$1,700,000. It is not clear that the higher sale price would be a greater benefit to creditors than the option price of $1,400,000.

    F.  **Fraudulent Conveyance**

In certain of its filings, Debtor appeared to argue that a sale of the Property to 786 in accordance with the Option would constitute a fraudulent conveyance under § 548. Debtor does not address this issue other than a brief mention at trial that specific performance would result in a constructively fraudulent transfer. The Court notes that §548 which governs fraudulent transfers does not apply in this situation as it applies to pre-petition transfers. Further, as discussed above, Debtor has offered no proof that the transfer of title to 786 in exchange for the

appraised amount would not be for "reasonably equivalent value." The Court will consider this argument abandoned.

### III. CONCLUSION

For all of these reasons, the Motion to Approve Contract for Sale is denied; the Motion to Reject Executory Contract is denied; judgment will be entered for the defendant 786 Enterprises, Inc. on the Complaint to Compel Turnover of Property; and judgment will be entered for the plaintiff 786 Enterprises, Inc. on the Complaint for Declaratory Relief and Specific Performance. The Request to Determine Lease Term is moot.

Dated this 7th day of March, 2017.      /s/Dennis R. Dow_____
                                        THE HONORABLE DENNIS R. DOW
                                        UNITED STATES BANKRUPTCY JUDGE